**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: ______________**

BRADLEY BARROW, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

RED VIOLET, INC.,

Defendant.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Bradley Barrow ("Plaintiff") brings this class action against Defendant Red Violet, Inc. ("Defendant"), which is a data broker operating a publicly accessible online directory at www.idcore.com, asserting violations of Colorado's "Prevention of Telemarketing Fraud Act" ("PTFA"), Colo. Rev. Stat. § 6-1-304, and alleges as follows based upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE ACTION

1. This is a class action brought by a Colorado citizen against Defendant for its pervasive practice of compiling and commercially disseminating the cellular telephone numbers of Colorado citizens without their explicit, affirmative consent indirect violation of the PTFA, a consumer privacy law designed to protect the privacy of Colorado citizens. The PTFA prohibits the commercial listing of a cell phone number in a directory without the individual's consent.

2. The Colorado General Assembly enacted the PTFA with a clear legislative declaration recognizing the rapid increase in commercial telephone solicitation and the unique risks and potential for abuse it presents. The legislature found that "widespread practice of

fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest." Colo. Rev. Stat. § 6-1-301.

3. On May 27, 2005, an amendment to the PTFA, HB05-1288, was signed into law, expressly prohibiting the commercial listing of a cellular phone number in a directory without the owner's affirmative consent. The amendment was aimed at protecting Colorado citizens from the misappropriation of their personal information and to protect their privacy rights in an increasingly digital world.

4. Specifically, the PTFA as amended states:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing;

Colo. Stat. § 6-1-304(4).

5. Despite this clear statutory language, Defendant operates a website, www.idicore.com ("Website"), which openly collects and lists a variety of personal information, including cell phone numbers, without any type of consent from the individuals to whom the phone numbers belong and pertain. Defendant makes the personal data, sourced from various public records and third-party data brokers, readily available to anyone with Internet access and who pays a membership fee.

6. Therefore, Defendant monetizes personal data, including the cell phone numbers of Colorado citizens, through its publicly accessible directory, thereby profiting from the unauthorized disclosure of private information.

7. The alleged conduct is not merely a technical violation of the PTFA, but it exposes individuals to significant concrete risks. The Federal Trade Commission ("FTC") has long warned about the potential dangers associated with data brokers, including the facilitation of harassment, stalking, identity theft, and vulnerability to a wide assortment of fraudulent schemes.[1]

8. Defendant's publicly accessible compilation of personal data, including cell phone numbers, creates a fertile ground for malicious actors to exploit this information for harmful purposes, such as scams, phishing, and doxxing. This is particularly concerning for vulnerable populations, such as the elderly, who are frequently targeted by fraud over the telephone.

9. The PTFA further provides:

> A person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action to the owner of the cellular telephone for consequential damages, court costs, attorney fees, and a penalty in the amount of at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense.

Colo. Stat. § 6-1-305(1)(c).

10. As such, Plaintiff brings this action individually and on behalf of a class of every person in the state of Colorado whose cell phone number was listed on Defendant's directory without required PTFA affirmative consent within the applicable statute of limitations period, and seeks to compel Defendant to cease its unlawful practices and to recover statutory damages provided by the PTFA.

## PARTIES

11. Plaintiff Bradley Barrow is an adult individual who at all relevant times has been a

[1] Fed. Trade Comm'n, *Data Brokers: A Call for Transparency and Accountability* (May 2014), https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.

citizen of the state of Colorado.

12. Defendant is a Delaware corporation with its headquarters and principal place of business located at 2650 North Military Trail, Suite 300, Boca Raton, Florida 33431.

## JURISDICTION AND VENUE

13. The Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and the proposed Class Members, including Plaintiff, are citizens of a state different from Defendant.

14. The Court has personal jurisdiction over Defendant because Defendant's headquarters and principal place of business is in Georgia.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1)–(d) because Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

**Overview of Defendant's Directory**

16. Defendant describes in its most recent 10-K that it "market[s] [its] solutions primarily through two brands, IDI™ and FOREWARN®." Defendant goes on to describe the first of those brands: "IDI is a leading-edge, analytics and information solutions provider delivering actionable intelligence to an expansive and diverse set of industries in support of use cases such as the verification and authentication of consumer identities . . . idiCORE™ is IDI's flagship product."[2]

---

[2] https://investors.redviolet.com/node/9806/html

17. Defendant's business model for IDI and idiCORE is to gather cell phone numbers and other personal information about individuals, and then charge a fee to individuals in the general public who wants that personal information, without any attempt at obtaining consent from the individuals to whom that personal information pertains.

18. The Website functions as a directory and allows anyone on the Internet to search for individuals and find their contact information, including their cell phone number. Its "advanced identity intelligence" tools are advertised to "analyz[e] billions of data points in real time":[3]




19. Defendant's listing of the cell phone numbers of Colorado citizens is intentional, and a key part of its business model. Defendant advertises its IDI products as providing "coverage for nearly 100% of the U.S. adult population and "comprehensive" identity graphs covering

[3] https://www.redviolet.com/

individuals[4]:




20. Defendant operates its Website directory entirely for a commercial purpose. As shown below, to gain access to the Website and any of Defendant's IDI products, including idiCORE, coreIDENTITY, idiMARKETING, idiTRACE, idiCRIM, or idiVERIFIED, it is necessary to fill out a form and Defendant's sales department will follow up about subscription pricing or a product trial[5]:

[4] https://www.ididata.com/
[5] https://www.ididata.com/trial/




21. Each cell phone number listed on the Website serves as an advertisement to users to start their or continue their subscription so as to access additional cell phone numbers on the Website.

22. Further, the mere collection of personal information about Colorado citizens, including cell phone numbers, inherently serves a commercial purpose for Defendant. Data aggregators like Defendant generate income by selling access to and information about private citizens. The commercial value of the data collected underscores the violation of the PTFA when affirmative consent is not obtained.

**Defendant's Conduct Harms Coloradans.**

23. Defendant's practices inflict tangible harm upon Colorado citizens both by undermining their privacy rights and by exposing them to significant concrete risks. The commercial value of consumer data is well-established. By listing cell phone numbers without consent, Defendant deprives Coloradans of control over their personal data and its inherent economic value. Consumers are increasingly aware of this value and are willing to pay a premium

for services that prioritize data protection.

24. Beyond the economic deprivation of data value, the public listing of personal information, especially cell phone numbers, on people search sites like Defendant, poses serious safety and security threats.[6] The aggregation of personal data makes it easier for cybercriminals to "craft convincing scams or carry out identity theft."[7] This practice puts "almost anyone within the reach of fraudulent telemarketers" and other wrongdoers.[8] The risks include increased exposure to unsolicited contact, harassment, phishing attempts, doxxing, and an overall reduction in personal online privacy.

25. The vulnerability of certain demographics is particularly problematic. Elderly individuals, for instance, are frequently targeted by fraudulent telemarketers, and Defendant's making their cell phone information readily available exacerbates this risk.[9] Moreover, once an individual is identified as susceptible to a certain type of spam, they may be subjected to a barrage of similar fraudulent offers.

26. Defendant's collection and display of personal information without consent directly contributes to these harms, frustrating the legislative intent of the PTFA to safeguard privacy and protect consumers from telemarketing fraud.

---

[6] *See* Fed. Trade Comm'n, *What To Know About People Search Sites That Sell Your Information* (July 2022) https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[7] Kurt Knutsson, *The dangerous intersection of people search sites and scams*, FOX NEWS (Sept. 9, 2024), https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[8] Charles Duhigg, *Bilking the Elderly, With a Corporate Assist*, THE NEW YORK TIMES (May 20, 2007), https://www.nytimes.com/2007/05/20/business/20tele.html.

[9] *Incogni Research: 60% of Elder Fraud Sams Enabled by Personal Data Vulnerabilities* (Nov. 13, 2023), https://thecreditunionconnection.com/incogni-research-60-of-elder-fraud-scams-enabled-by-personal-data-vulnerabilities/.

**Plaintiff Bradley Barrows' Experience**

27. As shown in the screenshots below, Plaintiff Bradley Barrow's cell phone number was listed by Defendant in its directory, available at the Website, for a commercial purpose, where the Website user can search for an individual by some combination of name, address, date of birth, and other identifiers, and with one click can obtain the individual's personal information, including cell phone number(s). Specifically, when searching for her last name, first name, city, and state, Plaintiff's correct, current cell phone number comes up as the first result, marked as "C" for cellular.






28. Defendant never requested and Plaintiff never provided affirmative consent, through written, oral, or electronic means, for such listing.

29. Plaintiff has no relationship with Defendant whatsoever and had no occasion or reasonable ability to discover Defendant's use of her personal information, most notably her cellular phone number, until shortly before filing this suit. Class Members similarly have no relationship with Defendant and did not give affirmative consent to list their cell phone numbers for sale on Defendant's website.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All natural persons who are or were citizens of the state of Colorado whose cellular telephone numbers were listed for sale on the Website or any other website operated by Defendant within the applicable statute of limitations period.

31. Excluded from the Class are Defendant, their parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the

judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

32. **Numerosity:** The Class is so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the Class numbers in the millions of persons. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may easily be determined through discovery using the data Defendant maintains in the regular course of its business. Class Members may be notified of the pendency of this action by mail and/or email through the records of Defendant.

33. **Commonality:** There are numerous questions of law and fact common to the Class, including but not limited to:

a. Whether Defendant collected and publicly disseminated Plaintiff's and Class Members' cellular telephone numbers;

b. Whether Defendant unlawfully disclosed and continues to unlawfully disclose its users' cellular telephone numbers in violation of the PTFA by selling access to it;

c. Whether Defendant disclosed Plaintiffs' and Class Members' cellular telephone numbers without affirmative consent; and

d. Whether Defendant are liable for damages, and the amount of such damages.

34. **Typicality:** Plaintiff's claims are typical of the claims of Class Members, as they are all based on the same factual and legal theories.

35. **Adequacy of Representation:** Plaintiff is a representative who will fully and adequately assert and protect the interests of the class and has retained competent counsel.

36. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if there are any at all, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

37. **Superiority:** In this lawsuit, a class action is superior to all other available methods for its fair and efficient adjudication because individual litigation of the claims of all class members is economically infeasible and procedurally impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

38. **Declaratory and Injunctive Relief.** Rule 23(b)(2) of the Federal Rules of Civil Procedure: Defendant has acted or refused to act on grounds generally applicable to Plaintiff and Class members, thereby making appropriate declaratory relief, with respect to the Class as a whole.

39. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described herein in violation of the PTFA.

40. Unless a class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class will continue to be unlawfully eavesdropped upon.

**VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT (PTFA)**
**Colo. Rev. Stat. 6-1-304(4)(a)(I)**
**(On Behalf of Plaintiff and the Class)**

41. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully

set forth herein.

42. Plaintiff brings this claim individually and on behalf of the Class.

43. Colo. Rev. Stat. § 6-1-304(4)(a) states: "[A] person commits an unlawful telemarketing practice if the person knowingly (I) lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing."

44. As a matter of its general business practice, Defendant has repeatedly violated the PTFA. Defendant knowingly lists the cellular telephone numbers of Colorado citizens for sale on the Website. The Website allows Defendant's members to search for individuals, including Colorado citizens, and obtain their cell phone numbers without affirmative consent. The nature of the Website, which aggregates and displays cell phone data, demonstrates knowledge.

45. The Website functions as a "directory." The plain meaning of the word "directory" in American English is an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area."[10] Defendant's business model fully comports with this definition, as it allows its members to search for names, addresses, and phone numbers in a structured manner.

46. Defendant engages in this conduct for a commercial purpose. Defendant's business model is based on collecting and selling access to personal data, a commodity with inherent monetary value.

47. Defendant neither requested nor received Colorado citizens' "affirmative consent, through written, oral, or electronic means, to such listing." Colo. Stat. § 6-1-304(4). To the

---

[10] Oxford Learner's Dictionary, *Directory*, https://www.oxfordlearnersdictionaries.com/us/definition/american_english/directory.

contrary, Defendant compiles and lists cell phone numbers of Coloradans with whom it has no connection or agreement of any kind.

48. Defendant's misappropriation of Plaintiff's and Class Members' personal data, including its economic value, has violated Plaintiff's and Class Members' privacy rights under the PTFA. This deprivation extends to the real, quantifiable value of such data, from which Defendant profits. Further, it has exposed Plaintiff and Class Members, for no reason, to increased risks of stalking, harassment, scams, identity theft, and unwanted telemarketing solicitations.

49. Plaintiff and Class Members are each entitled to their consequential damages and "a penalty in the amount of at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense." Colo. Stat. § 6-1-305(1)(c).

50. In addition, Plaintiff and Class Members are entitled to court costs and attorneys' fees incurred to bring this private civil action. *Id*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. Declaring that Defendant's conduct violates the PTFA;

C. Finding in favor of Plaintiff and Class Members on the claim asserted herein;

D. Enjoining Defendant to desist from further violation of the PTFA, and awarding such other injunctive relief as the Court deems appropriate;

E. Awarding Plaintiff and Class Members actual damages, consequential damages, statutory damages, and disgorgement, in amounts to be determined by the Court or by the jury at trial;

F. Awarding Plaintiff and Class Members pre-judgment and post-judgment interest; and

G. Awarding Plaintiff and Class Members their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Dated: April 15, 2026

Respectfully submitted,

*/s/ Steven Sukert*

Steven Sukert, FBN 1022912
Jeff Ostrow, FBN 121452
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 332-4200
sukert@kolawyers.com
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*